Johnson, J.
The controversy in this case concerns the construction of the proviso contained in Section 7730, General Code, which was passed May 27, 1915 (106 O. L., 398). Pertinent parts of the section are as follows: “The board of education' of any rural or village school district may suspend any or all schools in such village or rural school district. * * * When the average daily attendance of any school for the preceding year has • been below ten, such school shall be suspended and the pupils transferred to another school or schools when directed to do so by the county board of education. No school of any rural district shall be suspended until ten days’ notice has been given by the board of education of such district * * * provided, however, that any suspended school as herein provided, may be reestablished by the suspending authority upon its own initiative, or upon a petition asking for reestablishment, signed by a majority of the voters of the suspended district, at any time the school enrollment of the said suspended district shows twelve or more pupils of lawful school age.”
*371 The relator contends that upon the filing of the petition referred to, by a majority of the voters of the suspended district, the provision for reestablishment is mandatory, and that the word “may” should be construed to mean “shall.”
The school code now in operation was passed February 5, 1914 (104 O. L., 133). The sections of the General Code' which are therein amended do not appear in the act in their consecutive order, but Sections 4726 and 7730 are found on the same page (139). By the provisions of Section 4726 it is enacted that a rural board of education may submit the question of centralization, and, upon the petition of not less than one-fourth of the qualified electors of such rural district, or upon the order of the county board of education, must submit such question to the vote of the qualified electors of such rural district at a general election or a special election called for that purpose.
It is further provided in that section that if the proposition fails, the question shall not again be submitted to the electors of such rural district for a period of two years, except upon the petition' of at least forty per cent, of the electors of such district.
Section 7730, as there amended, did not contain the proviso involved in this case. At the succeeding session of the legislature the proviso was added to that section.
It will be observed that the only provisions for centralization are found in Section 4726, in which the method by which centralization can be had is specifically described. By those provisions the mat *372 ter of centralization is required to be left to a vote of the people.
By the provisions of Section 7730 the board of education of any rural or village district may suspend any or all schools in the district, and in a village district may provide, and in rural districts shall provide, for the conveyance of pupils attending such schools, to a public school in the rural or village district, or to a public school in another district.
It will be observed that in this section there is no reference to centralization, nor to the abolition entirely of the suspended district. The use of the term “suspend” necessarily implies the possibility of a revivor or reestablishment, and the terms of the proviso indicate, of course, that the legislature contemplated the reopening of any “suspended school.”
Now, consider the terms of the proviso. It enacts that any suspended school “may be reestablished by the suspending authority upon its own initiative.” Here is an explicit and plenary grant of power to the board of education of the rural or village district to reestablish the school. The grant could not be more comprehensive. Then follows the language, “or upon a petition asking for a reestablishment, signed by a majority of the voters of the suspended district, at any time the school enrollment shows twelve or more pupils of lawful school age.”
There are some well-settled rules of construction which we think must be applied to the proviso in question, and which control. It must be construed *373 as a whole and given such interpretation as will give effect to every word and clause in it. No part should be treated as superfluous unless that is manifestly required, and the court should avoid that construction which renders a provision meaningless or inoperative.
Concerning the meaning to be given to the words “may” and “shall” this court in The State of Ohio v. Budd, 65 Ohio St., 1, at page 5, say: “The cases in which it is held that these words should be regarded as convertible are numerous, and they contain much learning. The sum of it, however, is that the natural meaning of these words is not always conclusive as to the construction of statutes in which they are employed, and that one should be regarded as having the usual meaning of the other when that is required to give effect to other language of the statute or to carry out the purpose of the legislature as that purpose may appear from a general view of the statute under construction.”
In Columbus, Springfield & Cincinnati Rd. Co. v. Mowatt, 35 Ohio St., 284, it is said, at page 287: “Where authority is conferred to perform an act which the public interest demands, may is generally regarded as imperative.”
It is generally recognized that the true rule is that the legislative intention in the enactment of a particular statute should be the chief guide of the court in its interpretation.
This rule is stated in 5 Words and Phrases, page 4421, and it is there also said: “The word ‘may’ in a statute will be construed to mean 'shall’ whenever the rights of the public or third persons de *374 pend on the exercise of the power or the performance of the duty to which it refers, and such is its meaning in all cases where the public interests and rights are concerned, or a duty is imposed on public officers, and the public or third persons have a claim de jure that the. power .shall be exercised.” Many authorities are there cited in support of the above proposition.
Mr. Justice Swayne, in Supervisors v. United States, ex relatione, 71 U. S., 435, says at page 446: “The conclusion to be deduced from the authorities is, that where power is given to public officers, in the language of the act before us, or in equivalent language — whenever the public interest or individual rights call for its exercise — the language used, though permissive in form, is in fact peremptory. What they are empowered to do for a third person the law requires shall be done. The power is given, not for their benefit, but for his.”
Tested by these rules, what must be said as to the proviso in question? As already pointed out the' first clause confers upon- the board absolute authority to reestablish the suspended school on its own initiative. Unless the word “may” was used in a mandatory sense, the remaining part of the proviso is wholly meaningless and vain. By this last clause, it is provided that the district may be reestablished upon a petition signed by a majority of the voters of the district; but under the first clause the same board might reestablish the school on the petition of a small minority, or upon no petition at all. We cannot conceive, and we find nothing in the language to indicate, that the legisla *375 ture enacted the additional clause without any purpose whatever in view.
We think it clear that the legislature intended that the word “may” when applied to the last clause in the proviso should be held to be mandatory. It intended to secure to the residents of the rural arid village school district, which has 12 or more pupils of lawful school age, the privileges of the residents of other similar districts, that have not been centralized by the affirmative vote of the people' pursuant to the statute hereinbefore referred to. The demurrer to the answer will be sustained, and, defendant not desiring to plead further, the peremptory writ will be allowed.

Writ allowed.

Nichols, C. J., Newman, Jones, Matthias and Donahue, JJ., concur.